UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| TN AMERICAS LLC<br>7160 Riverwood Drive, Suite 200<br>Columbia, MD 21046 | *<br><br>* | |
| *Plaintiff*, | * | Civil Action No.: |
| v. | * | |
| ROBERT STRANG<br>8640 Cobblefield Drive<br>Apt. 2B<br>Columbia, MD 21045 | *<br><br>* | |
| *Defendant*. | * | |

\* \* \* \* \* \* \* \* \* \* \*

# COMPLAINT

Plaintiff TN Americas LLC ("TNA" or "Plaintiff"), by and through undersigned counsel, files this Complaint against Defendant Robert Strang ("Strang"), and states as follows:

## Introduction

Duties of loyalty, good faith, honesty, and fair dealing form a critical part of all employer-employee relationships. In practice, this means that employees must devote their energy and attention to their company's interests, and not exploit their company's trust for the benefit of a competitor or themselves. These duties take on even greater importance when an employee is entrusted with valuable trade secrets and proprietary data that form the company's lifeblood.

This case concerns Defendant Robert Strang's brazen scheme to steal TNA's confidential trade secrets. TNA is a subsidiary of Orano, a leading technology and services provider for the

nuclear full cycle industry, with more than 50 years of global experience in the transport of radioactive materials domestically and internationally.

Strang is the former President of Transport Logistics, Inc. ("TLI"), a company Orano acquired in October 2021. Since the closing date of the TLI acquisition, Orano has been integrating TLI's business into its U.S. nuclear transports business, which is operated under TNA. As part of this merger, Strang became the Business Line Director for Transport & Services at TNA. In connection with this new job offer, Strang signed a Restrictive Covenant Agreement ("RCA"), which contained a one-year non-competition covenant, a non-solicitation covenant, and a confidentiality covenant. In his role with TNA, and based upon his prior experience as President of TLI, Strang was entrusted with TNA's trade secrets and confidential proprietary data, which took decades to develop and are vital to TNA's business model.

Strang abruptly left TNA in November of 2022. Shortly after his departure, Strang was announced as the CEO of a company called RSB Logistics, a direct competitor of TNA that transports nuclear material domestically and internationally. Upon receipt of this public announcement, TNA immediately conducted a search of Strang's company computer and email account. TNA discovered that Strang forwarded confidential TNA data to his personal email account prior to his departure from TNA.

On December 12, 2022, TNA, through undersigned counsel, sent letters to Strang and RSB which provided full notice of Strang's violation of his non-competition, non-solicitation, and confidentiality covenants. RSB, through counsel, advised that it has terminated Strang as its CEO. Strang never responded to the December 12, 2022 letter.

Strang remains in possession of TNA's confidential data, and has already shown his willingness to flout the covenants in the RCA that he voluntarily executed in July 2022. TNA

brings this action for injunctive relief and damages to hold Strang accountable for his misappropriation of confidential information, materials, and trade secrets; the breach of his non-competition, non-solicitation, confidentiality covenants in the RCA, as well as his breach of fiduciary duty; violation of the Federal Defend Trade Secrets Act and Maryland Uniform Trade Secrets Act; and conversion.

## The Parties

1. TNA is a Delaware limited liability company with its principal office located at 7160 Riverwood Drive, Suite 200 in Columbia, Maryland. TNA is registered to do business with the Maryland State Department of Assessments and Taxation.

2. Robert Strang is an individual who, during his time with TNA, maintained a residential address at 8640 Cobblefield Dr., Apt. 2B, Columbia, MD 21045.

## Jurisdiction

3. This Court has both personal and subject matter jurisdiction over all of the parties and this civil action, in which TNA seeks, among other relief, permanent injunctive relief, money damages, attorneys' fees, and costs for Defendant's wrongful conduct, breach of common law duties, and violations of Maryland's Uniform Trade Secret Act, and the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq*.

4. Jurisdiction is proper under 28 U.S.C. § 1331 because TNA alleges claims presenting federal questions under the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq*.

5. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the Maryland state law claims alleged in this Complaint.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because TNA's primary office is in Maryland. The effects of Strang's wrongful conduct occurred, and continue to occur, in Maryland.

7. Venue is also proper because the RCA was entered into in Maryland and provides that Maryland law governs the agreement. The RCA additionally contains a mandatory forum selection clause stating that any legal action related to or arising from the RCA "shall be brought exclusively" in the U.S. District Court for the District of Maryland or a state court located in Montgomery County, Maryland. **Exhibit 1**, *Restrictive Covenant Agreement*, Section 8.5, at p. 15.

8. This Court has personal jurisdiction over Strang because he has purposefully, intentionally, and knowingly transacted, solicited, and engaged in business within the State of Maryland, including disclosure and use of TNA's confidential information.

9. This action is timely commenced within all applicable statutes of limitations and repose.

10. There is no unperformed condition precedent to the bringing of this action by TNA.

**Factual Allegations**

**TNA's Business and Confidential Data**

11. TNA is in the nuclear material transportation and logistics business. TNA is continuously developing and refining certain confidential information, which it utilizes to properly serve its customers, improve upon its services, and expand its business. This information includes, but is not limited to, a confidential customer and client list, financial data,

cost and pricing information, commercial information, and sales strategy (collectively "Confidential Information").

12. TNA has long implemented reasonable means and methods to ensure that the Confidential Information remains secret, and has carefully compartmentalized the Confidential Information within its employee ranks so that only authorized employees are afforded access to it. The Confidential Information is closely guarded, and only made accessible to certain TNA employees with a need to know this information to perform their jobs. Under company policies, employees must use measures to safeguard Confidential Information using TNA information security resources. Upon an employee's separation from TNA, access to Confidential Information is revoked.

13. TNA's Confidential Information is the product of years of research, development, and experience in safely transporting nuclear materials.

14. TNA's Confidential Information pertaining to customer and client lists are trade secrets under both Maryland and federal law, and as set forth herein, TNA has taken affirmative steps to protect the secrecy of the Confidential Information.

15. TNA's Confidential Information, and more generally TNA's overall business, are related to a product or service used in, or intended for use in, interstate commerce.

16. TNA invested considerable resources in creating its Confidential Information, and its ability to recoup that investment, and to benefit and run its core business, depends upon its ability to safeguard this Confidential Information.

17. TNA's Confidential Information is of independent economic benefit to anyone competing against TNA. TNA's competitors would realize a substantial benefit if they could

obtain and use TNA's Confidential Information without having made the initial investment in developing TNA's Confidential Information.

18. Any unauthorized disclosure or use of TNA's Confidential Information would cause significant damage to TNA's business.

19. For any action TNA brings to enforce the terms of the RCA, the prevailing party "shall be entitled to recover its costs and expenses incurred," including "reasonable attorneys' fees." **Ex. 1**, Section 8.5, at p. 15.

## COUNT I
### Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1831 *et seq.*

20. TNA repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

21. The Confidential Information and other confidential and highly sensitive business information are extremely valuable to TNA, are the result of many years of research and experience, and are essential to the sustained vitality of TNA's business.

22. Through the conduct alleged herein, Strang has intentionally and willfully misappropriated TNA's business opportunities and confidential information, specifically including but not limited to TNA's Confidential Information, and other confidential and highly sensitive business information.  Strang's actions have directly caused TNA significant damages, and inevitably will cause TNA to suffer additional financial and other losses.

23. As alleged herein, TNA has taken reasonable and necessary measures to safeguard the secrecy and confidentiality of its trade secrets, which are valuable and lucrative assets of TNA.

24. By emailing copies of TNA's Confidential Information to himself, Strang has misappropriated TNA's trade secrets and confidential information, without the consent of TNA, to the detriment of TNA, and for his own commercial advantage, in violation of the Federal Defend Trade Secrets Act.

25. Strang's actions were committed with actual malice, evil motive, and with the intent to injure TNA and benefit himself.

26. Strang's unlawful actions have caused, and unless restrained, will continue to cause severe, immediate and irreparable injury, including irreparable damage to TNA for which TNA has no adequate remedy at law.

27. Pursuant to 18 U.S.C. § 1836, owners of any trade secret(s) that is (are) related to a product service used in, or intended for use in, interstate commerce and whose trade secret(s) is (are) misappropriated by another may sue to enforce their business and competitive interests in such trade secret(s).

28. Pursuant to 18 U.S.C. § 1832, the theft of a business's trade secrets further violates federal law.  Specifically, anyone who, with intent to convert a trade secret, "(1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains [trade secret] information;" "(2) without authorization copies, duplicates, . . . photographs, downloads, . . . photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys  such information;" "(3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization;" or attempts to do any of these things, is also subject to up to $5,000,000 in fines and 10 years' imprisonment.

WHEREFORE, TNA demands that this Court: (a) issue a permanent injunction restraining Defendant from continuing to misappropriate the trade secrets of TNA; (b) enter judgment for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) in favor of TNA and against Defendant, and interest as may be caused by virtue of the improper conduct as alleged herein; (c) award TNA exemplary damages in an amount sufficient to promote fairness and justice as a matter of public policy and to deter Defendant and other individuals or entities from engaging in similarly willful and malicious conduct in the future; (d) award TNA its reasonable attorneys' fees, interest and costs; and (e) award such other relief as the Court deems just and proper.

## COUNT II
### Misappropriation of Trade Secrets in Violation of the Maryland Uniform Trade Secrets Act (MUTSA), Md. Code Ann., Com. Law §§ 11-1201 *et seq.*

29. TNA repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

30. The Confidential Information is extremely valuable to TNA, is the result of many decades of building goodwill and a sustained track record in the nuclear industry, and is essential to the sustained vitality of TNA's business.

31. By emailing himself copies of TNA's Confidential Information, Defendant has intentionally and willfully misappropriated TNA's business opportunities and confidential information, specifically including but not limited to TNA's Confidential Information, and other confidential and highly sensitive business information. Defendant's actions already have directly caused TNA significant damages, and inevitably will cause TNA to suffer additional financial and other losses.

32. As alleged herein, TNA has taken reasonable and necessary measures to safeguard the secrecy and confidentiality of its trade secrets, which are valuable and lucrative assets of TNA.

33. Strang has misappropriated TNA's trade secrets and Confidential Information, without the consent of TNA, to the detriment of TNA, and for his own commercial advantage, in violation of the Maryland Uniform Trade Secrets Act.

34. Defendant's actions were committed with actual malice, evil motive, and with the intent to injure TNA and benefit himself.

35. Defendant's unlawful actions have caused, and unless restrained, will continue to cause severe, immediate and irreparable injury, including irreparable damage to TNA for which TNA has no adequate remedy at law.

WHEREFORE, TNA demands that this Court: (a) issue a permanent injunction restraining Defendant from continuing to misappropriate the trade secrets of TNA; (b) enter judgment for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) in favor of TNA and against Defendant, and interest as may be caused by virtue of the improper conduct as alleged herein; (c) award TNA exemplary damages in an amount sufficient to promote fairness and justice as a matter of public policy and to deter Defendant and other individuals or entities from engaging in similarly willful and malicious conduct in the future; (d) award TNA its reasonable attorneys' fees, interest and costs; and (e) award such other relief as the Court deems just and proper.

### COUNT III – Breach of Contract – Noncompetition Agreement

36. The foregoing paragraphs of this Complaint are incorporated by reference as if more fully set forth herein.

37. The RCA to which Strang voluntarily agreed was the product of an arm's-length negotiation.

38. Both Strang and TNA agreed to be bound by the terms of the RCA.

39. The RCA contains a non-competition covenant, which provides that Strang cannot work for a direct competitor for a period of one year. **Ex. 1**, *Restrictive Covenant Agreement*, Section 5.1, at p. 9. The scope and duration of the RCA is narrowly drawn to protect TNA's legitimate business interests.

40. TNA provided consideration for the one-year non-competition agreement contained by offering Strang employment as a Line Manager.

41. Strang abruptly left TNA on November 4, 2022.

42. Strang breached his non-competition agreement when he began working at RSB Logistics on or about December 1, 2022. Strang executed a new employment contract with RSB on or about October 24, 2022.

43. RSB is a direct competitor of TNA.

44. Though Strang has purportedly been terminated as CEO of RSB, Strang remains non-responsive to TNA's correspondence. TNA reasonably fears that Strang will continue to violate his non-competition agreement, and that he will do so in a more discrete manner that will not be so easily-detectable as his first failed attempt with RSB.

45. TNA has suffered and will continue to suffer damages as a result of Strang's material breach of his non-competition agreement, including lost revenues.

WHEREFORE, TNA demands that this Court: (a) issue a permanent injunction restraining Defendant from continuing to misappropriate the trade secrets of TNA; (b) enter judgment for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00)

in favor of TNA and against Defendant, and interest as may be caused by virtue of the improper conduct as alleged herein; (c) award TNA exemplary damages in an amount sufficient to promote fairness and justice as a matter of public policy and to deter Defendant and other individual entities from engaging in similarly willful and malicious conduct in the future; (d) award TNA its reasonable attorneys' fees, interest and costs; and (e) award such other relief as the Court deems just and proper.

### COUNT IV – Breach of Contract – Non-Solicitation Agreement

46.     The foregoing paragraphs of this Complaint are incorporated by reference as if more fully set forth herein.

47.     The RCA to which Strang voluntarily agreed was the product of an arm's-length negotiation.

48.     The RCA contains a non-solicitation covenant which prohibits Strang from soliciting any TNA clients.

49.     TNA provided consideration for the non-solicitation agreement by offering Strang a position as a Line Manager.

50.     Strang left TNA on November 4, 2022.

51.     On or about December 1, 2022, Strang began working as CEO for RSB Logistics, a direct competitor of TNA.

52.     In the press release announcing his appointment as CEO for RSB, Strang telegraphed his intent to poach TNA customers by stating that he would be using his years of expertise to expand the North American nuclear transport market of RSB.

53.     Though Strang has purportedly been terminated as CEO of RSB, Strang remains non-responsive to TNA's correspondence.  TNA reasonably fears that Strang will continue to

violate his non-solicitation covenant, and that he will do so in a more discrete manner that will not be so easily-detectable as his first failed attempt with RSB.

54. TNA has suffered and will continue to suffer damages as a result of Strang's breach of his non-solicitation agreement, including lost revenues and lost clients.

WHEREFORE, TNA demands that this Court: (a) issue a permanent injunction restraining Defendant from continuing to misappropriate the trade secrets of TNA; (b) issue a permanent injunction prohibiting Defendant from soliciting TNA customers; (c) enter judgment for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) in favor of TNA and against Defendant, and interest as may be caused by virtue of the improper conduct as alleged herein; (d) award TNA exemplary damages in an amount sufficient to promote fairness and justice as a matter of public policy and to deter Defendant and other individual entities from engaging in similarly willful and malicious conduct in the future; (e) award TNA its reasonable attorneys' fees, interest and costs; and (f) award such other relief as the Court deems just and proper.

## Count V – Breach of Contract – Confidentiality

55. The foregoing paragraphs of this Complaint are incorporated by reference as if more fully set forth herein.

56. The RCA to which Strang voluntarily agreed was the product of an arm's-length negotiation.

57. Both Strang and TNA agreed to be bound by the terms of the RCA.

58. The RCA provides that Strang was prohibited from disclosing or using any confidential and proprietary information relating to TNA for the benefit of anyone other than TNA.

59. At the time Strang was covertly preparing to leave TNA and join RSB, he emailed himself several files containing confidential TNA data. Strang has not returned this confidential data, or responded to TNA's request that the confidential data be returned.

60. TNA has suffered and will continue to suffer damages as a result of Strang's breach of confidentiality, including lost revenues and lost clients.

WHEREFORE, TNA demands that this Court: (a) issue a permanent injunction restraining Defendant from continuing to misappropriate the trade secrets of TNA, and ordering Defendant to return all TNA Confidential Information; (b) enter judgment for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) in favor of TNA and against Defendant, and interest as may be caused by virtue of the improper conduct as alleged herein; (c) award TNA exemplary damages in an amount sufficient to promote fairness and justice as a matter of public policy and to deter Defendant and other individual entities from engaging in similarly willful and malicious conduct in the future; (d) award TNA its reasonable attorneys' fees, interest and costs; and (e) award such other relief as the Court deems just and proper.

## Count VI – Breach of Fiduciary Duty

61. The foregoing paragraphs of this Complaint are incorporated by reference as if more fully set forth herein.

62. Strang was a high-level Business Line Manager at TNA from July 2022 through October 2022.

63. As a high-level manager, Strang had common law fiduciary duties to TNA, including the protection of all confidential information connected with and gained through his employment at TNA, as well as the duty to act in the best interests of TNA, with utmost loyalty and honesty to TNA, and the duty to disclose to TNA any adverse information.

64. Strang intentionally and willfully breached his fiduciary duties to TNA by: (a) working for RSB, a direct competitor of TNA; (b) wrongfully taking and misusing TNA's confidential information for his own benefit; and (c) failing to disclose to TNA that he would be working for a direct competitor, even after explicit inquiries from TNA's top executive.

65. During Strang's scheme, he never told TNA that he would be taking any of the above actions adverse to TNA's business interests, despite his fiduciary duty of disclosure.

66. Strang's actions are being committed with the intent to injure TNA and divert business from TNA.

67. Strang's actions have caused and will continue to cause TNA significant financial damages and other losses.

WHEREFORE, TNA demands that this Court: (a) issue a permanent injunction restraining Defendant from continuing to misappropriate the trade secrets of TNA; (b) enter judgment for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) in favor of TNA and against Defendant, and interest as may be caused by virtue of the improper conduct as alleged herein; (c) award TNA exemplary damages in an amount sufficient to promote fairness and justice as a matter of public policy and to deter Defendant and other individual entities from engaging in similarly willful and malicious conduct in the future; (d) award TNA its reasonable attorneys' fees, interest and costs; and (e) award such other relief as the Court deems just and proper.

## **COUNT IX - Conversion**

68. TNA repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

69. At all times relevant to this lawsuit, TNA possessed ownership and dominion over its Confidential Information, as well as other company data, information, and equipment.

70. Prior to his resignation, Strang misappropriated and converted to his own use information and/or property of TNA that was not rightfully his. Furthermore, since his resignation from TNA, Strang has refused to acknowledge his theft of TNA's Confidential Information, and still retains possession of TNA's Confidential Information.

71. Strang's actions are intentional, without permission or justification, and constitute a misappropriation and conversion of TNA's property.

72. Strang's actions have been committed with actual malice, evil motive, and with the intent to injure TNA.

WHEREFORE, TNA demands that this Court: (a) issue a permanent injunction restraining Defendant from continuing to misappropriate the trade secrets of TNA; (b) enter judgment for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) in favor of TNA and against Defendant, and interest as may be caused by virtue of the improper conduct as alleged herein; (c) award TNA exemplary damages in an amount sufficient to promote fairness and justice as a matter of public policy and to deter Defendant and other individual entities from engaging in similarly willful and malicious conduct in the future; (d) award TNA its reasonable attorneys' fees, interest and costs; and (e) award such other relief as the Court deems just and proper.

### COUNT X – Intentional Misrepresentation by Concealment/Non-Disclosure

73. TNA repeats and realleges the foregoing paragraphs as if more fully set forth herein.

74. As a high-level Business Line Manager at TNA, Strang had both a duty of loyalty to TNA and a duty to disclose to TNA any adverse employment relationship he had.

75. On or about October 28, 2022, Strang provided his notice of resignation to TNA.

76. When TNA inquired what company Strang was going to work for, and whether he would be starting employment with a competitor of TNA, Strang lied to TNA and stated that he had no plans to work anywhere.

77. TNA would later discover that Strang began working for RSB on or about December 1, 2022, and in fact signed a new employment contract with RSB on or about October 24, 2022.

78. Strang's application for and acceptance of employment with a direct competitor is a material fact that, as a TNA manager, he was required to disclose to TNA.

79. Strang's failure to voluntarily disclose his impending employment with RSB in October of 2022 was done with the intent to deceive TNA, with the hope that TNA would not attempt to enforce its non-competition, non-solicitation, and confidentiality covenants.

80. TNA acted in justified reliance upon Strang's concealment of his future employment plans, and allowed him to continue working for TNA and accessing its confidential data during an additional week-long transition period as a result of this misplaced trust in Strang.

81. As a result of Strang's misrepresentation by concealment, TNA has suffered material harm.  Had Strang revealed, while he was still employed by TNA, that he was planning to go work for RSB, then TNA would have taken immediate action to safeguard its confidential data from Strang and ensure that its trade secrets would not fall into the hands of a competitor.

82. As a result of TNA's justified reliance on Strang's misrepresentation, TNA has suffered significant damages in excess of $75,000.00.

WHEREFORE, TNA demands that this Court:  (a) issue a permanent injunction restraining Defendant from continuing to misappropriate the trade secrets of TNA; (b) enter judgment for compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00) in favor of TNA and against Defendant, and interest as may be caused by virtue of the improper conduct as alleged herein; (c) award TNA exemplary damages in an amount sufficient to promote fairness and justice as a matter of public policy and to deter Defendant and other individual entities from engaging in similarly willful and malicious conduct in the future; (d) award TNA its reasonable attorneys' fees, interest and costs; and (e) award such other relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff TNA requests the following relief to be entered against Defendant:

(a) *Injunctive relief (non-disclosure and non-use of confidential information)* - enter an Order granting TNA permanent injunctive relief restraining Defendant from using, retaining, utilizing, disseminating and/or disclosing any trade secret, confidential information or other proprietary information of TNA on behalf of any other party, or on his or their own behalf;

(b) *Injunctive relief (return of TNA's property and confidential information)* - enter an Order granting TNA permanent injunctive relief requiring Defendant to return immediately to TNA all records and other property (in any form) pertaining in any way to TNA, and requiring Defendant to identify all computers, databases or other storage means or devices on which any such data was downloaded or stored;

(c) Injunctive relief (enforcement of non-competition and non-solicitation covenants) – enter an Order granting TNA permanent injunctive relief requiring Defendant to refrain from

working for a direct competitor of TNA for one year, and requiring Defendant to refrain from soliciting TNA customers;

  (c) An *Order* requiring Defendant to account for all gains, proceeds, profits, and advantages that he earned by virtue of the improper conduct as alleged herein;

  (d) An *Order* holding Defendant liable for and directing Defendant to pay to TNA statutory damages in the amount to be determined by the Court by virtue of the improper conduct as alleged herein;

  (e) *Judgment* in excess of Seventy-Five Thousand Dollars ($75,000.00) in favor of TNA and against Defendant for such compensatory damages and interest as may be caused by virtue of the improper conduct as alleged herein;

  (f) *Judgment* in favor of TNA and against Defendant for punitive damages attributable to the malicious conduct toward and/or acts of reckless disregard for TNA's interest and in an amount sufficient to deter Defendant from similar future misconduct;

  (g) *Judgment* in favor of TNA and against Defendant for statutory damages, exemplary damages, attorneys' fees, costs and interest pursuant to the Maryland Uniform Trade Secrets Act and/or the Federal Defend Trade Secrets Act;

  (h) *Judgment* in favor of TNA and against Defendant for reasonable attorneys' fees incurred by TNA in prosecuting this action;

  (i) *Judgment* in favor of TNA and against Defendant for the costs of this action; and

  (j) That TNA be awarded such other and further relief as this Court deems just and equitable.

Respectfully submitted,


  */s/*   Vincent P. Jackson
Darrell VanDeusen, # 08231
Vincent P. Jackson, # 20878
Kollman & Saucier, P.A.
The Business Law Building
1823 York Road
Timonium, MD 21093
(410) 727-4300 – Phone
(410) 727-4391 - Fax
vjackson@kollmanlaw.com

*Attorneys for Plaintiff*